**INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC., Appellant–Defendant–Counter–claimant,**

v.

**Angel GARCIA, Appellee–Plaintiff–Counter–claim Defendant.**

No. 45A03–0706–CV–290.

Court of Appeals of Indiana.

Nov. 14, 2007.

Robert M. Baker, III, Law Office of Robert M. Baker, III, Indianapolis, IN, Attorney for Appellant.

Michael J. Jasaitis, Eduardo Fontanez, John Cantrell, The Law Office of Michael J. Jasaitis, Hammond, IN, Attorneys for Appellee.

**OPINION**

BARNES, Judge.

**Case Summary**

The Indiana High School Athletic Association, Inc., ("IHSAA") appeals the trial

court's denial of its motion to transfer venue from Lake County to Marion County. We affirm.

## Issue

The IHSAA raises one issue, which we restate as whether the trial court properly denied its motion to transfer to a county of preferred venue.

## Facts

In August 2006, Angel Garcia, an eighteen-year-old high school junior, transferred from Lake Forest Academy ("Lake Forest") to East Chicago Central High School ("East Chicago"). While a student at Lake Forest, Garcia played varsity basketball. When Garcia transferred to East Chicago, the IHSAA conducted an investigation and granted Garcia only "limited eligibility for a period of 365 days from the date of his enrollment at [East Chicago]." App. p. 49.

On December 29, 2006, Garcia filed a complaint against the IHSAA in Lake County. Garcia sought a temporary restraining order, a preliminary injunction, a permanent injunction, and a declaratory judgment allowing him to fully participate in varsity athletics at East Chicago. That same day, the trial court issued a temporary restraining order. On January 25, 2007, the trial court issued a temporary injunction against the IHSAA.

On January 31, 2007, the IHSAA filed its answer and counterclaim and its motion to transfer to a county of preferred venue, specifically Marion County. Garcia objected to the motion to transfer, and the IHSAA replied to Garcia's objection. On March 9, 2007, the trial court heard arguments on the motion to transfer. The trial court then denied the IHSAA's motion. The IHSAA now appeals.[1]

## Analysis

■ The IHSAA argues that the trial court improperly denied its motion to transfer to a county of preferred venue. Motions to transfer venue are governed by Indiana Trial Rule 75. As our supreme court has recently clarified, factual findings linked to a ruling on a motion under Indiana Trial Rule 75(A) are reviewed under a clearly erroneous standard and rulings of law are reviewed de novo. *American Family Ins. Co. v. Ford Motor Co.*, 857 N.E.2d 971, 973 (Ind.2006). "If factual determinations are based on a paper record, they are also reviewed de novo." *Id.* Because we are faced with a mixed question of fact and law and any factual determinations were based on a paper record, our review is de novo.

■ A case may be commenced or decided in any county in Indiana, but if the complaint is not filed in a preferred venue, the court is required to transfer the case to a preferred venue upon the proper request from a party. *Coffman v. Olson & Co., P.C.*, 872 N.E.2d 145, 147 (Ind.Ct.App. 2007); Ind. Trial Rule 75(A). "The rule does not create a priority among the subsections establishing preferred venue." *Coffman*, 872 N.E.2d at 147. If a complaint is filed in a county of preferred venue, the trial court has no authority to transfer the case based solely on preferred venue in one or more other counties. *Id.*

Indiana Trial Rule 75 provides in part that preferred venue lies in:

(4) the county where either the *principal office of a defendant organization is located* or the office or agency of a defendant organization or individual to which the claim relates or out of which the claim arose is located, if one or more such organizations or individuals are in-

---

1. Pursuant to Indiana Appellate Rule 14(A)(8), appeals from the refusal to transfer a case under Indiana Trial Rule 75 are taken as a matter of right.

cluded as defendants in the complaint; or

(5) the county where either one or more individual plaintiffs reside, *the principal office of a governmental organization is located,* or the office of a governmental organization to which the claim relates or out of which the claim arose is located, if one or more governmental organizations are included as defendants in the complaint. . . .

(Emphasis added).

The parties dispute whether the IHSAA is a "defendant organization" or a "governmental organization" for purposes of Indiana Trial Rule 75(A). The IHSAA asserts that because it is a Marion County-based not-for-profit corporation, preferred venue lies in Marion County pursuant to Indiana Trial Rule 75(A)(4). Garcia argues, and the trial court concluded, that the IHSAA should be considered a "governmental organization" pursuant to Indiana Trial Rule 75(A)(5), rendering Lake County a county of preferred venue.

No prior cases have determined whether the IHSAA is a "defendant organization" or a "governmental organization" for purposes of Indiana Trial Rule 75. However, we find our supreme court's decision in *Indiana High School Athletic Association v. Carlberg,* 694 N.E.2d 222 (Ind.1997), instructive on this issue.

In *Carlberg,* Carlberg transferred high schools, and the IHSAA determined that he had only "limited athletic eligibility" for 365 days following his enrollment. *Carlberg,* 694 N.E.2d at 226. After exhausting his administrative remedies, Carlberg filed suit against the IHSAA arguing that the application of the "Transfer Rule" was arbitrary and capricious and violated his constitutional rights. *Id.* at 227. The trial court entered an injunction against the IHSAA allowing Carlberg to participate in varsity athletics. *Id.* The IHSAA appeal-

ed, we affirmed the trial court's decision, and our supreme court granted transfer. *Id.*

In its decision, the *Carlberg* court noted, "Organized under the laws of this state, the IHSAA is a voluntary, not-for-profit corporation comprised of members including public, private, parochial and institutional schools in this state. The member schools associated through the IHSAA adopt rules regarding eligibility and similar matters related to interscholastic athletic competition." *Id.* at 226 n. 1. The court went on to state, "In the course of that quarter century's worth of cases, there has been great variation in the claims made and law invoked by the parties and in the method of analysis employed by the reviewing courts." *Id.* at 228.

In *Carlberg* and its companion case, *Indiana High School Athletic Association v. Reyes,* 694 N.E.2d 249 (Ind.1997), our supreme court issued the following principles to be employed in reviewing cases involving the IHSAA:

First, the integral role that athletics play in our state's constitutionally-mandated system of education and the history of judicial scrutiny of IHSAA decisions together dictate that the common law provide for judicial oversight of those decisions.

Second, the common law will treat the IHSAA as a private membership organization with respect to challenges to it

*Third, the common law will treat the IHSAA as analogous to a government agency with respect to challenges to its rules and enforcement actions brought by students and other non IHSAA members with standing to do so.*

Fourth, rules and decisions of the IHSAA constitute "state action" for the purposes of constitutional review. How-

ever, there is no right or interest to participate in interscholastic sports that is entitled to protection under the federal Equal Protection or Due Process Clauses or the state Due Course of Law Clause. Thus, scrutiny of IHSAA decisions under the Equal Protection and Due Process Clauses will generally be limited to whether they impinge upon a suspect classification and whether they have a rational basis. Scrutiny under the Privileges and Immunities Clause will generally be limited to whether they have a reasonable basis.

*Carlberg*, 694 N.E.2d at 228–29 (citations omitted) (emphasis added).

Differentiating student challenges of IHSAA decisions from school challenges of IHSAA decisions, our supreme court observed that students do not voluntarily subject themselves to the rules of the IHSAA, they have no voices in its rules or leadership, and they spend a relatively short time in high school compared to the amount of time required for institutional policies to change. *Id.* at 230. The court concluded, "These factors all point to the propriety of judicial scrutiny of IHSAA decisions with respect to student challenges." *Id.*

The court also noted:

The IHSAA's "very existence is entirely dependent upon the absolute cooperation and support of the public school systems of the State of Indiana." *Haas v. South Bend Community Sch. Corp.*, 259 Ind. 515, 520, 289 N.E.2d 495, 498 (1972).

That cooperation and support is derived from the lawful delegation from public schools to the IHSAA of authority conferred upon public schools by the legislature. *Kriss v. Brown*, 180 Ind.App. 594, 608, 390 N.E.2d 193, 201 (1979). We have noted in support of the conclusion that IHSAA decisions constitute "state

action" that (i) the salaries of most the principals and coaches involved in interscholastic athletics are derived from tax funds; (ii) most of the athletic contests are held in, or on, athletic facilities which have been constructed and maintained with tax funds; and (iii) IHSAA rules are adopted by tax-supported schools and their enforcement may have a substantial impact upon the rights of students enrolled in these tax supported institutions. *Haas*, 259 Ind. at 520, 289 N.E.2d at 498.

*Id.* at 231 n. 8.

In determining the appropriate standard of review in student challenges, the *Carlberg* court likened IHSAA decisions to governmental agency decisions and determined that an arbitrary and capricious standard of review was proper. *Id.* at 231. The court acknowledged that this analogy is not perfect and that the IHSAA is not a government agency subject to the Indiana Administrative Orders and Procedures Act ("AOPA"). *Id.* It also noted that "the analogy can become attenuated depending upon the nature of the IHSAA action being challenged." *Id.* The court summarized that IHSAA decisions will be reviewed "in a manner analogous to judicial review of government agency action, recognizing, however, that the IHSAA is not a government agency and the common law will have to accommodate that difference." *Id.*

Relying on *Carlberg*, the IHSAA argues that it is not a "governmental entity." Appellant's Br. p. 10. We believe this is an overbroad reading of *Carlberg*. Although based on *Carlberg*, the IHSAA is not a "governmental agency" subject to AOPA, we simply do not agree that *Carlberg* stands for the proposition that the IHSAA is not a "governmental organization" for purposes of Indiana Trial Rule 75(A)(5) in

a case brought against the IHSAA by a student.

First, if the IHSAA is a "state actor" for purposes of students' constitutional rights, then we do not have to make a giant leap to conclude that it is also a "governmental organization" for purposes of Indiana Trial Rule 75—that is if the IHSAA can act in a manner that allegedly violates a student's constitutional rights, it can be considered an arm of the government for purposes of the Indiana Trial Rule 75. Further, because the case before us today involves a student's claim against the IHSAA, and not a claim of a member-school, we agree with Garcia that it would be unfair to force students to litigate adverse rulings of the IHSAA in Marion County. Because "for a student athlete in public school, membership in IHSAA is not voluntary," we believe that the IHSAA is a "governmental organization" for purposes of Indiana Trial Rule 75 as it relates to claims brought by student athletes. *Carlberg,* 694 N.E.2d at 230 (quotation omitted).

The IHSAA also argues that Garcia failed to prove its "character" through competent evidence. Appellant's Br. p. 6. The IHSAA specifically argues that Garcia did not prove the facts of the case, rather he "lifted" them "from other court's findings in reported cases which are 10–30 years old, involving whether the IHSAA was a state actor for Constitutional analysis." Appellant's Reply Br. p. 7. Regardless of when these cases were decided, the IHSAA has not shown that the nature of the IHSAA has changed since those decisions or that they are otherwise inapplicable to this case.

Moreover, Indiana Trial Rule 8(C) provides that a claim of improper venue is an affirmative defense, which the pleading party must prove. Accordingly, the

IHSAA had the burden of proof in challenging venue in Lake County. *See Indianapolis–Marion County Public Library v. Shook, LLC,* 835 N.E.2d 533, 540 (Ind.Ct. App.2005). Only upon the IHSAA meeting its burden of proof did the burden shift to Garcia to show that Lake County was a county of preferred venue.

Here, attached to its motion to transfer, the IHSAA included the affidavit of Blake Ress, the Commissioner of the IHSAA. In his affidavit, Ress swore that the IHSAA is a not-for-profit corporation with its principal place of business in Marion County. Ress asserted, "The IHSAA is a private entity. The IHSAA is neither a public nor governmental organization. Other than as a citizen subject to the rules, regulations, ordinances and laws of the various governmental organizations, the IHSAA is not connected with any local, state or federal governing organization." App. p. 108. However, this evidence, when taken with the decision in *Carlberg,* did not conclusively establish that Marion County was the proper venue. Thus, the burden did not shift to Garcia to produce evidence refuting the IHSAA's venue challenge. This alleged error does not provide a basis for reversing the trial court's order.[2]

### Conclusion

The trial court properly denied the IHSAA's motion to transfer venue to Marion County. We affirm.

Affirmed.

KIRSCH, J., and ROBB, J., concur.

2. Based on our decision today, we need not address the parties' arguments regarding Indiana Trial Rule 75(A)(7) or Garcia's request to amend the complaint.